IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBORAH OSNESS, individually and on behalf of all others similarly situated, | : : : : |
| Plaintiff, | : : |
| v. | : CIVIL ACTION NO. 11-3846 |
| LASKO PRODUCTS, INC., | : : : |
| Defendant. | : : |

**MEMORANDUM**

YOHN, J.                                                                                                            April 10, 2012

  Plaintiff, Deborah Osness, filed this putative class-action lawsuit individually and on behalf of all others similarly situated who purchased certain box fans manufactured by defendant, Lasko Products, Inc. ("Lasko"). The fans at issue were subject to voluntary recalls announced by the U.S. Consumer Product Safety Commission, after Lasko had received reports of fires allegedly caused by electrical failures in the fans' motors. Plaintiff does not allege that her fan caused a fire or that this defect has otherwise manifested itself in her fan. But, alleging that Lasko knew of the defect and failed to disclose it to consumers, she asserts claims under state consumer-fraud statutes as well as for breach of express warranty, breach of the implied warranty of merchantability, and unjust enrichment. Currently before me is Lasko's motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, I will grant Lasko's motion.

I.     **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

On February 8, 2006, after reports of fires allegedly caused by electrical failures in the motors of Lasko fans, the Consumer Product Safety Commission announced a voluntary recall of several models of Lasko fans. (Compl. ¶ 14, Press Release, U.S. Consumer Product Safety Commission, Lasko Recalls Box and Pivoting Floor Fans Posing Fire Hazard (Feb. 8, 2006) ("2006 Recall Notice").[2]) The recall covered approximately 5.6 million fans manufactured by Lasko between January 1999 and July 2001 and sold to consumers between September 2000 and February 2004 for $10 to $25. (2006 Recall Notice.)

According to plaintiff, Lasko's continued manufacturing of defective fans led to further incidents of fires involving Lasko fans. (Compl. ¶ 23.) As a result, on March 24, 2011, the Consumer Product Safety Commission again announced a voluntary recall of Lasko fans. (*Id.*; Press Release, U.S. Consumer Product Safety Commission, Lasko Recalls Box Fans Due to Fire Hazard (Mar. 24, 2011) ("2011 Recall Notice").[3]) This second recall covered approximately 4.8 million fans manufactured by Lasko between 2002 and 2004 and sold to consumers between July 2002 and December 2005 for $12 to $25. (2011 Recall Notice.) Plaintiff alleges that the defect in the fans that were recalled in 2011 is the same as or is similar to the defect in the fans that were recalled in 2006. She specifies that the fans, "due to a design defect, can in normal use, overheat,

---

[1] The following summary is based on the allegations in plaintiff's class-action complaint, which I assume to be true for purposes of Lasko's motion to dismiss, *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009), as well as the recall notices released by the Consumer Product Safety Commission. Although plaintiff did not attach the recall notices to her complaint, I may consider them in connection with Lasko's motion to dismiss, since they are a matter of public record and since plaintiff has relied on them in her complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

[2] The notice is available at http://www.cpsc.gov/cpscpub/prerel/prhtml06/06085.html.

[3] The notice is available at http://www.cpsc.gov/cpscpub/prerel/prhtml11/11183.html.

smoke, and catch fire." (Compl. ¶ 1.)

The fans that were recalled in 2006 and 2011 were covered by a two-year express warranty.[4] (*Id.* ¶ 29.) But, apparently because the recalls were announced after this two-year warranty had expired, Lasko has allegedly refused to refund the purchase price of the fans or to replace the defective fans. (*Id.*) Plaintiff alleges that "Lasko had received reports of the fires and other facts supporting the mandated recall," but "did not act to remediate in any manner the defect in the fans prior to the mandated recall," delaying notice of the defect to avoid its obligations under its two-year warranty. (*Id.* ¶¶ 17–18; *see also id.* ¶ 27.) Instead of repairing or replacing the allegedly defective fans, Lasko has provided a "fan protection cord adapter" that eliminates the risk of fire but, according to plaintiff, does not eliminate the underlying defect in the fans. (*Id.* ¶ 30.) Plaintiff describes the adapter as a "short extension cord with a wall plug on one end and a locking receptacle on the other with a safety fuse installed between the two." (*Id.*) Plaintiff alleges that the underlying defect in the fans can "blow[] the fuse" in the adapter. (*Id.* ¶ 31.) Because the adapter cannot be removed once it is installed and the adapter's safety fuse cannot be replaced, such a blown fuse permanently disables the fan. (*Id.*) Plaintiff alleges that "Lasko will not replace or repair even those fans that are permanently disabled because the fuse within the 'fan protection cord adapter' is blown." (*Id.* ¶ 32.)

---

[4] According to plaintiff, the warranty was printed on the outside of the box in which the fan was sold and provided, in relevant part:

> This product is warranted for two years from the date of original purchase against defects in workmanship and/or materials. At our option, parts that prove to be defective will either be repaired or replaced or the whole product will be replaced.
>
> Should electrical or mechanical repair become necessary during the warranty period, send your complete product, postage or freight pre-paid, to your nearest service center.

(Compl. ¶ 103.)

3

Plaintiff alleges that she purchased a Lasko fan that was recalled (*id.* ¶ 7), although she does not state when or where she purchased it, and does not specify the model number of the fan or whether it was subject to the 2006 recall or to the 2011 recall. Nor does plaintiff allege that the defect has manifested itself in her fan or caused any injury or damage, or that her fan has otherwise failed to perform properly.

Nonetheless, on June 13, 2011, plaintiff filed this putative class-action lawsuit against Lasko, asserting five counts individually and on behalf of all others similarly situated. She alleges that Lasko knew of the defect in the fans (although she does not say when) and fraudulently concealed the presence of the defect from consumers, in violation of state consumer-fraud statutes (count I). She also alleges that Lasko breached the implied warranty of merchantability (count II) and that Lasko breached its express two-year warranty by refusing either to repair the defect in the fans or to replace the defective fans (count IV). Contending that Lasko knew of the defect when it warranted the fans at the time of sale and that Lasko delayed announcing the recalls and the existence of the defect to avoid its obligations under its two-year warranty, plaintiff seeks a declaration that the two-year limitation on the warranty is unenforceable (count III). Finally, plaintiff asserts a claim for unjust enrichment, alleging that Lasko's retention of certain amounts that consumers paid for the fans is unjust under the circumstances (count V).

Lasko has now filed a motion to dismiss the complaint under Rule 12(b)(6).

## II. STANDARD OF REVIEW

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations "that are 'merely consistent with' a defendant's liability," or that permit the court to infer no more than "the mere possibility of misconduct" are not enough. *Id*. at 1949–50 (quoting *Twombly*, 550 U.S. at 557). Rather, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. When a court evaluates a motion to dismiss, "the factual and legal elements of a claim should be separated." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210–11; *see also Iqbal*, 129 S. Ct. at 1950 (asserting that a court should assume the veracity of well-pleaded factual allegations, but legal conclusions "are not entitled to the assumption of truth"). And the court must draw all reasonable inferences in favor of the plaintiff. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).

## III. DISCUSSION

Before turning to the merits of plaintiff's claims, I must address the choice-of-law issue presented by this case. Plaintiff is a resident of Illinois; Lasko is a Pennsylvania corporation with its headquarters also in Pennsylvania. Thus the question is whether Pennsylvania law or Illinois law governs plaintiff's claims.

A federal court exercising diversity jurisdiction must apply the choice-of-law rules of the forum state, in this case, Pennsylvania. *See Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55

(3d Cir. 1994) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 497 (1941)). Pennsylvania has adopted a flexible choice-of-law rule, under which "courts are to apply the law of the forum with the 'most interest in the problem.'" *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 227 (3d Cir. 2007) (quoting *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 806 (Pa. 1964)). The first step of the analysis is to determine whether "an *actual* or real conflict [exists] between the potentially applicable laws." *Id.* at 230. If an actual conflict exists, that is, if there are relevant differences between the laws, then the court should examine the governmental policies underlying each law and classify the conflict as true where application of either state's law would impair the other state's policy, or as false where only one state's policy would be impaired by application of the other's law. *Id.* at 230. A deeper choice-of-law analysis is required only when there is a true conflict. *Id.* Because choice-of-law analysis "is issue-specific, different states' laws may apply to different issues in a single case, a principle known as 'depecage.'" *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006).

  Plaintiff's first claim alleges violations of the consumer-fraud statutes of all the states in which members of the putative class reside. Only plaintiff's individual claim is at issue here, however. The parties agree that, because plaintiff is an Illinois resident, she may pursue a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act (the "Illinois Consumer Fraud Act"), 815 Ill. Comp. Stat. 505/1 *et seq.* In addition, plaintiff contends that she may also seek relief under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the "UTPCPL"), 73 Pa. Stat. Ann. § 201-1 *et seq.*, and asserts that there are no conflicts that require a choice-of-law analysis at this stage of the proceedings, although she has suggested that it would

6

be more appropriate to apply the Illinois statute.[5] As I explain below, I conclude that plaintiff has failed to state a claim under either statute. For ease of discussion, however, I analyze her claim under the Illinois Consumer Fraud Act.

With respect to plaintiff's breach-of-warranty claims, the parties both assert that there is no conflict between Illinois and Pennsylvania law and contend that to the extent a conflict does exist, Pennsylvania law should apply. While I am not entirely convinced by their analysis, because the parties are in agreement as to the application of Pennsylvania law, I will apply Pennsylvania law for purposes of this motion to dismiss. In any event, as I note below, I conclude that plaintiff's breach-of-warranty claims fail under both Pennsylvania and Illinois law.

Finally, with respect to her unjust-enrichment claim, plaintiff contends that there is no conflict between Pennsylvania and Illinois law and that to the extent any conflict exists, Pennsylvania law should apply. Lasko contends that plaintiff's claims fail under the law of either state. Lasko does, however, suggest a potential conflict, asserting that Illinois courts are split as to whether Illinois law recognizes unjust enrichment as an independent cause of action or whether unjust enrichment must be tied to another claim in tort, contract, or statute. But Lasko contends that I need not reach this question because, to the extent that Illinois law does recognize an independent cause of action for unjust enrichment, plaintiff's allegations are insufficient to state a claim under either Pennsylvania or Illinois law. I agree with Lasko, although for ease of

---

[5] In its brief supporting its motion to dismiss, Lasko initially addressed plaintiff's claim under the UTPCPL. In opposing Lasko's motion, plaintiff rejected Lasko's contention that she had failed to state a claim under the Pennsylvania statute but also suggested that, because she is an Illinois resident, it would be more appropriate to apply Illinois's consumer-fraud statute. In a supplemental brief addressing the choice-of-law issue at my request, Lasko now contends that the Illinois statute governs plaintiff's claim and that she lacks standing to pursue a claim under the Pennsylvania statute. Plaintiff, on the other hand, contends that she may seek relief under both statutes and asserts that there are no conflicts that require a choice-of-law analysis at this time.

discussion I analyze plaintiff's claim under Pennsylvania law.

### A.     The Illinois Consumer Fraud Act

The Illinois Consumer Fraud Act makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices," including the omission or concealment of a material fact, in the conduct of trade or commerce, 815 Ill. Comp. Stat. 505/2,[6] and provides a private cause of action for a person who suffers "actual damage" as a result of a violation of the act, *id.* 505/10a(a). In asserting a claim under the Illinois Consumer Fraud Act, plaintiff alleges that Lasko knew of the defect in the fans and fraudulently concealed the presence of the defect from consumers.

Lasko argues that plaintiff has failed to state a claim under the act because she has not sustained "actual damage" and because she has failed to plead her claim with the required specificity. Because I agree that plaintiff's complaint lacks the particularity and specificity required to state a claim under the act, I will grant Lasko's motion to dismiss this claim.[7]

---

[6] Section 2 provides, in relevant part:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 Ill. Comp. Stat. 505/2.

[7] Plaintiff's alleged damages are based on the diminution in the value of her fan caused by the defect. She claims that the defect in the fan's motor causes the premature failure of the fans and that the "fan protection cord adapter" does not eliminate the defect and only hastens the failure of the fans. According to plaintiff, the defect has thus reduced the expected useful life of her fan and has thereby diminished its value. She contends that she paid a "significant premium" for her Lasko fan that she would not have paid if she had known about the defect in the fan's motor. (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Br.") at 1; *see also* Compl. ¶ 33.)

"When a plaintiff in federal court alleges fraud under the [Illinois Consumer Fraud Act], the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011); *see also Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996) (stating that violation of the consumer-fraud statute must be pleaded "with the same particularity and specificity" as that required for common-law fraud). Under Rule 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In explaining Rule 9(b)'s particularity requirement, courts have stated that a plaintiff generally must "plead the who, what, when, where and how: the first paragraph of any newspaper story," *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009) (internal quotation marks omitted), or "otherwise inject precision or some measure of substantiation into a fraud allegation," *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

Here, plaintiff's theory of liability is premised on her claim that Lasko knew of the defect and failed to disclose it to consumers. But plaintiff's conclusory allegations that Lasko knew of

---

Contrary to Lasko's contention, "Illinois courts have generally allowed damages claims based on [the] diminished value" of an allegedly defective product, even where the plaintiff's product has not yet malfunctioned. *Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 10 (Ill. App. Ct. 2001) (discussing cases and concluding that plaintiff used-car buyer who alleged that seller had misrepresented and fraudulently concealed car's history raised genuine issue of material fact regarding damages even though car had not malfunctioned and only damage alleged was diminished value of car); *see also White*, 856 N.E.2d at 550 (recognizing that diminution in value "has been held to be a legally cognizable injury under the [Illinois Consumer Fraud Act], even where the plaintiff's product has not yet failed," but concluding that plaintiff had not adequately pleaded actual damages where he alleged that the value of his Jeep was diminished by a defective exhaust manifold but "never [said] he would have done anything differently, like bargain for a lower price or refuse to buy the vehicle, if he had known about exhaust manifold failures."). Of course, the diminution in value of plaintiff's fan may be much more difficult to demonstrate than the diminution in the resale value of a car, but that issue implicates factual issues that cannot be resolved at this motion-to-dismiss stage.

the defect are not sufficient to state a claim under the heightened pleading standard of Rule 9(b)—and indeed fail to satisfy even the more liberal pleading standards of Rule 8. Plaintiff alleges that, despite the 2006 recall and Lasko's "direct knowledge" of the defect that led to the recall, Lasko continued to manufacture fans with the same or a similar defect and failed to disclose the defect to consumers. (Compl. ¶¶ 20–21.) She alleges that the fans subject to the 2011 recall were "manufactured with a similar or the same defect as the fans recalled [in] 2006," and thus claims that Lasko knew of the defect in the fans subject to the 2011 recall at the time of their sale to consumers. (*Id.* ¶¶ 25–26.) She further alleges that in the case of both the 2006 and the 2011 recalls, "Lasko had received reports of the fires and other facts supporting the mandated recall, and had reason to know or knew about the defect in its fans before the mandated recall" but "did not act to remediate in any manner the defect in the fans prior to the mandated recall." (Compl. ¶ 17; *see also id.* ¶ 27.) She claims that Lasko delayed announcing the existence of the defect and recalling the fans to avoid its obligations under its express two-year warranty. (*Id.* ¶¶ 18, 27.)

But plaintiff does not specify when or how Lasko learned of the defect; nor does she allege when she purchased her fan. And her failure to plead such facts is fatal to her claim. Contrary to plaintiff's suggestion, the fact that Lasko knew of the defect at the time of the 2006 recall is not sufficient to establish that Lasko knew of the defect when it sold the fans that were subject to the 2011 recall. The fans subject to the second recall were sold to consumers between July 2002 and December 2005—before the first recall in February 2006. Moreover, even if Lasko was aware of the defect when other consumers purchased their fans, to state a claim plaintiff must allege that Lasko knew of the defect when *she* purchased *her* fan. And in the absence of allegations as to when she purchased her fan (it is not even clear from the complaint whether

10

plaintiff's fan was subject to the 2006 recall or to the 2011 recall), her complaint provides no basis for inferring that Lasko knew of the defect when plaintiff purchased her fan. Similarly, beyond plaintiff's conclusory allegations that Lasko knew about the defect before the recall and delayed announcing the recall to avoid its warranty obligations, plaintiff has alleged no facts from which it can be inferred that Lasko knew of the defect before the warranty on her fan expired.

Because plaintiff has failed to plead her claim with the particularity and specificity required under the Illinois Consumer Fraud Act, I will grant Lasko's motion to dismiss this claim.[8]

### B.     Breach of Express Warranty

Plaintiff alleges that Lasko breached its express warranty by refusing to repair or replace the defective fans and by instead providing the "fan protection adapter," which, according to plaintiff, eliminates the risk of fire but does not eliminate the underlying defect in the fans.

Lasko does not dispute that the fans were covered by a two-year express warranty. But Lasko argues that plaintiff has failed to state a claim because she has not alleged that she discovered a defect in her fan within the two-year warranty period. I agree.

The general rule is that "'defects discovered after the term of the warranty are not actionable.'" *Duquesne Light Co. v. Westinghouse Electric Corp.*, 66 F.3d 604, 616 (3d Cir.

---

[8] Plaintiff's conclusory allegations are similarly insufficient to state a claim under the UTPCPL—regardless of whether Rule 9(b) or the more liberal pleading standards of Rule 8 apply to plaintiff's claim, *see, e.g.*, *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 469 (E.D. Pa. 2009) (concluding that a plaintiff alleging fraudulent conduct under the UTPCPL must meet Rule 9(b)'s particularity requirement, whereas a plaintiff alleging deceptive conduct under the statute's "catchall provision" need not).

1995) (quoting *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986)). Contrary to plaintiff's suggestion, this rule applies even where the defect may have existed at the time of purchase but did not manifest itself until after the expiration of the warranty period. *See id.* at 616. Because plaintiff has not even alleged that her fan malfunctioned or that she otherwise discovered a defect in her fan within the two-year warranty period beginning on the undisclosed date of purchase, she cannot state a claim for breach of express warranty.[9]

Plaintiff contends, however, that the two-year limitation on Lasko's warranty should not be enforced here. She argues that the limitation is unconscionable because Lasko knew of the

---

[9] Citing *Tietsworth v. Sears, Roebuck & Co.*, No. 09-0288, 2011 WL 3240563 (N.D. Cal. July 29, 2011), and *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, No. 03-4558, 2008 WL 4126264 (D.N.J. Sept. 2, 2008), plaintiff contends that "numerous courts have allowed . . . express warranty claims, where the manifestation of the defect is likely to occur, even if the plaintiff has not yet experienced it." (Pl.'s Br. at 21.) I do not find these cases instructive here, however.

In *Tietsworth*, the court permitted the plaintiffs to amend the proposed class definitions to include consumers who had purchased allegedly defective washing machines but had not experienced problems with their machines. *See* 2011 WL 3240563, at *1. The court relied on the Ninth Circuit's holding that "proof of the manifestation of a defect is not a prerequisite to class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) (explaining that the question whether each class member had experienced the defect was essentially a question of whether the class members could "win on the merits" and that such an inquiry "does not overlap with the predominance test" for class certification). But at issue here is not whether the proposed class should be certified but whether plaintiff has sufficiently stated a claim to survive a motion to dismiss under Rule 12(b)(6). And when faced with that question in *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008), a putative class-action lawsuit that had not yet reached the class-certification stage, the Ninth Circuit upheld the dismissal of the plaintiff's claim for breach of express warranty because the defect had not manifested itself during the warranty period.

*In re Ford Motor* is similarly inapposite. The plaintiffs alleged that Ford had expressly warranted that their "15-passenger vans" could accommodate 15 passengers and that Ford had breached its warranty by selling a vehicle that could not safely transport 15 passengers because of an unusually high rollover rate. *See id.* at *1–3. Unlike the express warranty in this case, the warranty at issue in *In re Ford* was more akin to the implied warranty of merchantability. And indeed, the court addressed the express and implied warranty claims together and did not distinguish between the two in concluding that plaintiffs' allegations were sufficient to survive the motion to dismiss. *See id.* at *14–16. I thus do not find the court's reasoning applicable here.

alleged defect when it sold the fans and concealed the defect from consumers in order to avoid its obligations under its warranty. But plaintiff has failed to allege sufficient facts to support such a claim.

Under Pennsylvania law, a finding of "[u]nconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999) (internal quotation marks omitted).

Applying a similar test in *Carlson v. General Motors Corp.*, 883 F.2d 287 (4th Cir. 1989), the Fourth Circuit concluded that the plaintiffs' allegations of unconscionability were sufficient to withstand a motion to dismiss where they alleged that a durational limitation on General Motors' ("GM's") implied warranty of merchantability was unconscionable because GM knew of and failed to disclose inherent defects. The court reasoned that "[w]hen a manufacturer is aware that its product is inherently defective, but the buyer has 'no notice of [or] ability to detect' the problem, there is perforce a substantial disparity in the parties' relative bargaining power," and "[i]n such a case, the presumption is that the buyer's acceptance of limitations on his contractual remedies—including of course any warranty disclaimers—was neither 'knowing' nor 'voluntary,' thereby rendering such limitations unconscionable and ineffective." *Id.* at 296 (quoting *Martin v. Joseph Harris Co.*, 767 F.2d 296, 301–02 (6th Cir. 1985)).

Of course in *Carlson*, the plaintiffs alleged ten reasons why the limitation on the implied warranty of merchantability was unconscionable.[10] *Id.* at 294. Although the court found most

---

[10] They alleged, for example, that "[d]ue to unequal bargaining power and lack of effective warranty competition among dominant firms in the automobile manufacturing industry,

13

significant and focused most of its analysis on the allegation that GM knew of the defect when it sold the cars to the plaintiffs, it is not clear whether the court would have found this allegation alone sufficient to withstand a motion to dismiss.

Nonetheless, assuming (without deciding) that such an allegation of knowledge is sufficient to state a claim of unconscionability for purposes of withstanding a motion to dismiss, plaintiff has not sufficiently alleged unconscionability here. As discussed above, plaintiff has not sufficiently pleaded that Lasko knew of the alleged defect when it sold the fan at issue here. Plaintiff's complaint does not specify when or how Lasko allegedly learned of the defect; nor does it specify when she purchased a fan. In short, beyond her conclusory allegation that Lasko knew of the defect when it sold the fans, plaintiff has alleged no facts that would support an inference that Lasko knew of the defect when she purchased her fan. Accordingly, plaintiff's claim that the two-year limitation on Lasko's warranty is unconscionable fails here, and I will grant Lasko's motion to dismiss plaintiff's claim for breach of express warranty.[11,12]

---

[they] had no meaningful alternative to accepting GM's attempted limitation of the duration of the implied warranty." *Carlson*, 883 F.2d at 294. They also alleged that "diesel engines[] are designed to and ordinarily do function for . . . period[s] substantially in excess of th[ose] specified in GM's . . . warranties." *Id.* (alterations in original).

[11] In count III, plaintiff seeks a declaration that the two-year limitation on Lasko's express warranty is "void, invalid and not enforceable." (Compl. ¶ 101.) Because plaintiff has alleged no basis for such a declaration other than her claim that the limitation is unconscionable, I will similarly dismiss this count.

[12] The same reasoning applies under Illinois law, which "holds that express warranties of limited duration cover only defects that become apparent during the warranty period." *Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d 942, 950 (Ill. App. Ct. 2005) (upholding dismissal of claim because warranty had already expired when plaintiff sought repair of alleged defect and because plaintiff's conclusory allegations that defendant knew of defect at time of sale were insufficient to support claim that warranty was unconscionable).

In addition, Lasko contends that plaintiff's claim fails because she failed to allege that she notified Lasko of the breach as required under the Uniform Commercial Code (the "UCC") as adopted by Pennsylvania, 13 Pa. Cons. Stat. § 2607, and Illinois, 810 Ill. Comp. Stat. 5/2-607.

### C. Breach of Implied Warranty

Plaintiff also alleges that Lasko breached the implied warranty of merchantability. The implied warranty of merchantability arises by operation of law under the UCC. *See* 13 Pa. Cons.

---

The UCC provides that a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." 13 Pa. Cons. Stat. § 2607(c)(1); *see also* 810 Ill. Comp. Stat. 5/2-607(3)(a). This notice requirement applies to plaintiff's claims for breach of express warranty and breach of the implied warranty of merchantability. Plaintiff argues that she did not have to give direct notice to Lasko because Lasko was already aware of the defect and that, in any event, the filing of her complaint satisfies the notice requirement.

As the Pennsylvania Supreme Court has recognized, the law of Pennsylvania "is neither well-settled nor self-evident on these issues," *Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 26 n.17 (Pa. 2011) ("offer[ing] no opinion" as to what constitutes reasonable notice in the context of a class action), and courts have reached different conclusions regarding what constitutes sufficient notice, *compare AFSCME v. Ortho-McNeil-Janssen Pharm., Inc.*, No. 08-5904, 2010 WL 891150, at *6–7 (E.D. Pa. Mar. 11, 2010) (holding that notice of breach was necessary even though defendants had informed purchasers that product was defective, because even if defendants knew of defect they may not have known of plaintiffs' intent to file a class-action lawsuit and were denied opportunity to negotiate or settle claim without judicial intervention), *and Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 682–83 (E.D. Pa. 2011) (agreeing with reasoning of *AFSCME*, but concluding that plaintiff had satisfied notice requirement where other class members had complained to defendant about alleged defect), *with Bednarski v. Hideout Homes & Realty, Inc.*, 709 F. Supp. 90, 92–94 (M.D. Pa. 1988) (concluding that filing of complaint satisfies notice requirement).

Under Illinois law, however, plaintiff's breach-of-warranty claim must be dismissed for failure to satisfy the notice requirement. The Illinois Supreme Court has held that the notice requirement is satisfied "only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer." *Connick*, 675 N.E.2d at 590 (holding that defendant's awareness of safety problems was insufficient to satisfy plaintiffs' notice requirement where complaint did not allege that defendant had "actual knowledge of the alleged breach of the particular products purchased by the named plaintiffs"); *see also Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 863 (Ill. App. Ct. 1997) (asserting that "[a] federally mandated recall notice does not fulfill the [UCC]'s notice requirement," because "[a] manufacturer recall does not admit a defect in a particular product, but refers to the possibility of a defect in a class of products"). And except in the case of a plaintiff who suffers personal injuries, the filing of a complaint does not constitute sufficient notice. *See Connick*, 675 N.E.2d at 590. Because plaintiff has not alleged that Lasko had actual notice of her breach-of-warranty claim, and because plaintiff does not allege that her fan caused any personal injuries and thus the filing of her complaint does not constitute sufficient notice, her claim must be dismissed under Illinois law.

15

Stat. Ann. § 2314. Under section 2314, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." *Id.* § 2314(a). In order to be "merchantable," goods "must be at least such as . . . are fit for the ordinary purposes for which such goods are used." *Id.* § 2314(b).

Lasko argues that plaintiff has failed to state a claim for this implied warranty of merchantability because she has not alleged that her fan has malfunctioned or otherwise failed to do what it was supposed to do. I agree.[13]

The implied warranty of merchantability "serve[s] to protect buyers from loss where goods purchased are below commercial standards." *Turney Media Fuel, Inc. v. Toll Bros., Inc.*, 725 A.2d 836, 840 (Pa. Super. Ct. 1999). "The concept of 'merchantability' does not require that the goods be the best quality, or the best obtainable, but it does require that they have an inherent soundness which makes them suitable for the purpose for which they are designed, that they be free from significant defects, that they perform in the way that goods of that kind should perform, and that they be of reasonable quality within expected variations and for the ordinary purpose for which they are used." *Gall v. Allegheny County Health Dep't*, 555 A.2d 786, 789–90 (Pa. 1989) (citations omitted).

---

[13] I need not and thus do not address here Lasko's more general suggestion that, to state a claim for breach of implied warranty, a plaintiff must always allege that he or she experienced a problem with a particular product. I leave open the question whether, under certain circumstances, a plaintiff can rely on allegations that a defect is inherent in all units of a particular product and that other purchasers have experienced the problem. *Cf. Connick v. Suzuki Motor Co.*, 656 N.E.2d 170, 182 (Ill. App. Ct. 1995) (concluding that plaintiffs' claim for breach of implied warranty should not have been dismissed where plaintiffs alleged that Suzuki Samurai was defective in that it was prone to rollover under normal driving conditions, even though plaintiffs had not suffered rollovers, because the "gist of the complaint [was] that the defective Samurai is not safe and reliable" and therefore "not fit for the ordinary purpose for which automobiles are used, which is to provide safe and reliable transportation"), *aff'd in part and rev'd in part on other grounds*, 675 N.E.2d 584 (Ill. 1996).

Here, plaintiff has not alleged any facts suggesting that her fan was not merchantable. Plaintiff contends that the alleged defect in the motor causes the premature failure of the fans and that the "fan protection adapter" provided by Lasko does not eliminate the defect and only hastens the failure of the fans. As a result, plaintiff contends, the fans are "subject to being rendered useless far before a reasonable period of use." (Compl. ¶ 12.) But beyond these conclusory allegations, she has not pleaded any facts to support an inference that *her* fan was not "fit for the ordinary purpose[]" for which it is used. While plaintiff does not allege when she purchased her fan, the fans subject to the recalls were last sold in 2005, more than five years before plaintiff filed her complaint in this action on June 13, 2011. Plaintiff has not alleged that her fan has ever malfunctioned during this five-year (or potentially longer) period or that she has otherwise been unable to use her fan. In light of this, I see no basis in plaintiff's complaint for finding that the fan she purchased was not "merchantable."

I thus conclude that plaintiff has failed to state a claim for breach of the implied warranty of merchantability, and I will grant Lasko's motion to dismiss this claim.[14, 15]

### D.    Unjust Enrichment

Finally, and in the alternative, plaintiff asserts a claim for unjust enrichment. Plaintiff claims that Lasko, having failed to disclose the defect in the fans, has been unjustly enriched by the "premium" she paid for her fan.

In seeking dismissal of this claim, Lasko argues that plaintiff has failed to plead sufficient facts to state a claim for unjust enrichment. I agree.

---

[14] In addition, as I explain above in note 12, under Illinois law plaintiff's claim must be dismissed for failure to satisfy the UCC's notice requirement.

[15] Lasko has not raised a statute-of-limitations defense.

Under Pennsylvania law, the elements of a claim for unjust enrichment are (1) benefits conferred on the defendant by the plaintiff; (2) appreciation of such benefits by the defendant; and (3) acceptance and retention of these benefits under such circumstances that it would be inequitable for the defendant to retain the benefits without payment of value. *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008) (citing *Limbach Co. v. City of Philadelphia*, 905 A.2d 567, 575 (Pa. Commw. Ct. 2006)). "When considering the validity of a claim for unjust enrichment, [a court] must focus on whether the enrichment of the defendant is *unjust*." *Wiernik v. PHH U.S. Mortg. Corp.*, 736 A.2d 616, 622 (Pa. Super. Ct. 1999) (internal quotation marks omitted).

Here, plaintiff's complaint contains no facts to support an inference that the enrichment of Lasko was unjust. Plaintiff's unjust-enrichment theory rests on her claim that Lasko knew of the defect in the fans and failed to disclose it to consumers—under such circumstances, plaintiff contends, it would be unjust for Lasko to retain any benefit conferred by the purchase of its fans. But the problem, as discussed above, is that plaintiff has not sufficiently pleaded that Lasko knew of the alleged defect when it sold the fan at issue here. Simply put, plaintiff has not alleged any facts to support an inference that Lasko's retention of any benefits received from her purchase of a fan would be unjust. Accordingly, I will grant Lasko's motion to dismiss this claim.[16]

---

[16] The same reasoning applies under Illinois law, which requires that a plaintiff "allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511,, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)).

**IV.     CONCLUSION**

For the reasons set forth above, I will grant Lasko's motion to dismiss plaintiff's complaint without prejudice to plaintiff's right to file an amended complaint, if she can do so in compliance with the limits of Rule 11, within 20 days. Otherwise, I will dismiss the complaint with prejudice after the 20-day period has expired. An appropriate order accompanies this memorandum.